ELECTRONICALLY FILED
Jefferson County Circuit Court
Barbara A. Collins, Circuit Clerk
2022-Feb-11 11:07:32
35CV-22-98
C11WD02 : 30 Pages

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
## CIVIL DIVISION

**DARRYL HANDLEY**                                             **PLAINTIFF**

**VS.**                      **No. _____**

**KONINKLIJKE PHILIPS N.V.;**
**PHILIPS NORTH AMERICA, LLC;**
**PHILIPS HOLDING USA, INC.; and**
**PHILIPS RS NORTH AMERICA LLC**                              **DEFENDANTS**

## COMPLAINT

COMES NOW Plaintiff, Darryl Handley, by and through his attorney, David A. Hodges, and for his causes of action against Defendants, Koninklijke Philips N.V., Philips North America, LLC, Philips Holding USA, Inc., and Philips RS North America, LLC, does state and allege as follows:

## INTRODUCTION

1.      This is a lawsuit seeking judgment against Defendants, Koninklijke Philips N.V., Philips North America, LLC, Philips Holding USA, Inc., and Philips RS North America, LLC (collectively "Philips" or "Defendants") for personal injuries and sequelae thereto sustained by Plaintiff from Defendants' unreasonably dangerous product, the DreamStation CPAP machine.

2.    At all relevant times, Defendants created, designed, assembled, manufactured, constructed, produced, tested, packaged, labeled, marketed, advertised, promoted, made, distributed, and/or sold the DreamStation CPAP machine.

3.    Defendants are in the business of manufacturing and selling medical equipment products. These products include Continuous Positive Airway Pressure ("CPAP") and Bilevel Positive Airway Pressure ("BiPAP") machines, which are used in the treatment of sleep apnea, and ventilators, which treat respiratory failure. These products contain a polyester-based polyurethane (PE-PUR) foam which is used to minimize the sound produced by the devices.

4.    On April 26, 2021, Defendants made a public announcement disclosing that it had determined there were risks that the PE-PUR foam used in certain CPAP, BiPAP, and mechanical ventilator devices it manufactured may deteriorate over time, causing it to break down. When the PE-PUR foam breaks down, small foam particles and gases can be inhaled or ingested through the use of the devices.

5.    On June 14, 2021, Defendants announced a recall of many of its CPAP, BiPAP, and mechanical ventilator machines because they suffer from a defect which causes the deterioration of the PE-PUR sound abatement foam resulting in potential serious injury, permanent impairment, or even death to users of the affected products.

-2-

6.    The deterioration of the PE-PUR foam may emit volatile organic compounds, which, when inhaled, can result in serious adverse health effects, including but not limited to Acute Respiratory Distress Syndrome (ARDS), Lung Disease, Lung Damage, Chemical Poisoning, Heart Attack, Heart Failure, Kidney Disease, Reactive Airway Disease (RAD), Respiratory Failure, Severe Inflammation, and multiple types of Cancer.

## JURISDICTION AND VENUE

7.    A substantial part of the events or omissions giving rise to Plaintiff's causes of action occurred in Jefferson County, Arkansas. Plaintiff resided in Jefferson County, Arkansas, at the time of the events or omissions giving rise to his causes of action.

8.    This Court has subject-matter jurisdiction over this action under Ark. Const. Amend. 80 § 6(A) which makes the trial court the "original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Arkansas Constitution."

9.    This Court has personal jurisdiction over Defendants under Ark. Code Ann. §16-4-101(B) and the due process clause of the Fourteenth Amendment of the Unites States Constitution.

10.    The venue for this action is proper in Jefferson County, Arkansas pursuant to the provisions of Ark. Code Ann. § 16-60-101, *et. seq.*

-3-

11.    The employees of each Defendant, their subsidiaries, affiliates, and other related entities, were the agents, servants, and employees of the other Defendants, and each was acting within the purpose and scope of their agency and employment. References to any act or transaction of such Defendant shall be deemed to mean that the principals, officers, directors, employees, agents or representatives of each Defendant committed, knew of, performed, authorized, ratified, and/or directed such act or transaction for Defendant while in the scope of their duties.

12.    The running of any statute of limitations has been equitably tolled by reason of Defendants' fraudulent concealment and/or omission of critical safety information. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff, and his physicians, the true risks associated with the DreamStation CPAP machine created, designed, assembled, manufactured, constructed, produced, tested, packaged, labeled, marketed, advertised, promoted, made, distributed, and/or sold by Defendants.

13.    Due to Defendants' actions, Plaintiff was unaware and could not have reasonably known or learned through reasonable diligence that he had been exposed to the risks and harms set forth herein and that those risks and harms were the direct and proximate result of Defendants' acts or omissions.

-4-

## **THE PARTIES**

14.    Plaintiff, Darryl Handley, is, and was at all times relevant herein, a citizen and resident of Arkansas.

15.    Defendant Koninklijke Philips N.V. ("Royal Philips") is a public limited liability company established under the laws of The Netherlands, having its principal executive offices at Philips Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands. Royal Philips is the parent company of Philips North America, LLC, and Philips RS North America, LLC.

16.    Defendant Philips North America, LLC ("Philips NA") is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips NA is a wholly-owned subsidiary of Royal Philips. Upon information and belief, Philips NA manages the operation of Royal Philips' various lines of business, including Philips RS, in North America. The sole member of Philips NA is PHUSA, which is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips NA may be served through its registered agent, Corporation Service Company, located at 300 S. Spring Street, Little Rock, Arkansas 72201.

17.    Defendant Philips Holding USA, Inc. ("PHUSA") is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. PHUSA is a holding company that

-5-

is the sole member of Defendant Philips NA. PHUSA may be served through its registered agent, Corporation Service Company, located at 300 S. Spring Street, Little Rock, Arkansas 72201.

18.    Defendant Philips RS North America LLC ("Philips RS") is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15206. Philips RS may be served through its registered agent, Corporation Service Company, located at 300 S. Spring Street, Little Rock, Arkansas 72201. Philips RS is wholly owned subsidiary of Royal Philips.

## FACTUAL ALLEGATIONS

19.    At all times relevant to this Complaint, Defendants created, designed, assembled, manufactured, constructed, produced, tested, packaged, labeled, marketed, advertised, promoted, made, distributed, and/or sold Philips Respironics ventilator, CPAP, and BiPAP machines. These devices were designed to assist individuals with a number of sleep, breathing, and other respiratory conditions, including sleep apnea.

20.    Defendants marketed the Philips Respironics ventilator, CPAP, and BiPAP machines as safe, reliable, and quiet.

21.    On April 13, 2021, Defendants announced they were launching a newer generation of their devices.

22.    On April 26, 2021, Defendants disclosed that device user reports had led to the discovery that the PE-PUR sound abatement foam used by Defendants and installed into several CPAP and BiPAP respirators to minimize noise posed serious health risks to users. Specifically, Philips disclosed that, under certain circumstances, the PE-PUR foam may degrade.

23.    On June 14, 2021, Defendants announced a recall to address the identified health risks related to the PE-PUR sound abatement foam installed in between three to four million devices. Defendants had determined that PE-PUR foam could degrade over time, causing it to break down. When broken down, small foam particles and gases could be inhaled or ingested through the air paths of the devices meant to assist users with respiration. When inhaled or ingested, the broken down PE-PUR foam could result in a wide range of potential harm to users including serious life threatening injury or disease.

24.    In their recall notice, Defendants disclosed that the PE-PUR foam installed in the recalled devices puts users of such devices at risk of suffering from headache, skin irritation, eye irritation, throat irritation, inflammatory respiratory issues, and potential toxic or carcinogenic effects.

25.    On the same day Defendants issued the recall notice, Defendants also issued a report in which they disclosed that laboratory analysis of the degraded foam revealed the presence of potentially harmful chemicals including: Toluene Diamine, Toluene Diisocyanate, and Diethylene glycol. In the same

report, Defendants also disclosed that testing of the degraded foam also revealed the presence of Volatile Organic Compounds (VOCs). These compounds may be emitted from the PE-PUR sound abatement foam installed in the recalled devices and have potential short- and long-term adverse health effects.

26.    Defendants also disclosed that they had been receiving complaints about the recalled devices, however Defendants have not disclosed when they first received reports from users of its ventilators, CPAP, and BiPAP machines regarding black debris/particles within the devices' air paths.

27.    Defendants disclosed that an estimated number of between three to four millions devices are subject to recall, all of which were created, designed, assembled, manufactured, constructed, produced, tested, packaged, labeled, marketed, advertised, promoted, made, distributed, and/or sold by Defendants from 2009 up to April 2021.

28.    All devices subject to recall were disclosed by Defendants as part of the June 14, 2021, recall notification. The list of the affected devices includes 18 CPAP, BiPAP, and ventilator-type devices. The recalled devices include:

      a.    Type: Continuous Ventilator, Minimum Ventilatory Support, Facility Use

           i.    Model: E30 (Emergency Use Authorization)

    b.    Type: Continuous Ventilator, Non-Life Supporting

        i.  Model: DreamStation, ASV
        ii.  Model: DreamStation, ST, AVAPS
        iii. Model: SystemOne, ASV4
        iv. Model: C Series, ASV, S/T, AVAPS
        v.  Model: OmniLab Advanced Plus, In-Lab Titration Device

    c.    Type: Non-Continuous Ventilator

        i.  Model: SystemOne (Q Series)
        ii.  Model: DreamStation
        iii. Model: DreamStation GO
        iv. Model: Dorma 400, 500
        v.  Model: REMStar SE Auto

    d.    Type: Mechanical Ventilators

        i.  Model: Trilogy 100
        ii.  Model: Trilogy 200
        iii. Model: Garbin Plus, Aeris, LifeVent

    e.    Type: Continuous Ventilator, Minimum Ventilatory Support, Facility Use

        i.  Model: A-Series BiPAP Hybrid A30
        ii.  Model: A-Series BiPAP V30 Auto

    f.    Type: Continuous Ventilator, Non-Life Supporting

        i.  Model: A-Series BiPAP A40
        ii.  Model: A-Series BiPAP A30

29.    Plaintiff, Darryl Handley, is an adult resident of Pine Bluff, Arkansas. Plaintiff has been a resident and citizen of Pine Bluff, Arkansas, for all times relevant to this Complaint.

30.    On or around 2014, Plaintiff was prescribed the use of, and purchased, a DreamStation CPAP device produced, designed, manufactured, and sold by Defendants. The subject device purchased and used by Plaintiff was one of the devices subject to Defendants' recall notification on June 14, 2021.

31.    Since around 2014, Plaintiff has used the subject device daily as treatment for his sleep apnea condition.

32.    At all times Plaintiff used the subject device, he used the device in accordance with the guidelines, manual, and instructions set forth by Defendants.

33.    At all times Plaintiff used the subject device, he used the device for the purpose for which the device was created, designed, manufactured, marketed, sold, and intended by Defendants.

34.    At all times Plaintiff used the subject device, he used the device in accordance with the directions and instructions issued by his prescribing physician.

35.    After, and as a result of using the subject device, Plaintiff has suffered personal injuries including severe harm and injury to his respiratory system. These injuries would not have occurred but for the defective nature of the subject device and/or Defendants' wrongful conduct.

-10-

36.    Plaintiff received a recall notice from Defendants regarding the subject device on or about September 13, 2021. Two to three weeks prior to receiving the recall notice from Defendants, Plaintiff was admitted to the hospital with severe respiratory disease.

37.    While admitted to the hospital, Plaintiff was diagnosed with Acute Respiratory Failure with Hypoxia.

38.    Plaintiff's use of the subject device caused or significantly contributed to the development and progression of the severe respiratory disease for which Plaintiff was admitted to the hospital, and which continues to greatly impact Plaintiff's life.

39.    By reason of the foregoing, Plaintiff has had to undergo significant treatment, and will continue to be required to undergo significant treatment in the future.

40.    As a result of the aforesaid conduct of Defendants and use of the subject device manufactured, designed, sold, distributed, advertised, and promoted by Defendants, Plaintiff has been injured resulting in severe mental and physical pain and suffering. Such injuries have resulted in permanent disability to Plaintiff, and as a result of such injuries, Plaintiff has suffered damages for which compensatory damages should be awarded.

## COUNT I: PRODUCTS LIABILITY - DESIGN DEFECT

41.    Plaintiff incorporates by reference the preceding paragraphs as fully set forth herein.

42.    The subject device is a product within the meaning of Arkansas products liability law.

43.    The subject device was expected to reach, and did reach, users and/or consumers, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold or distributed.

44.    The recalled machines, including the subject CPAP device used by Plaintiff, were not reasonably safe for their intended use and were defective as described herein with respect to its design. The design defects of the subject device include, but are not limited to:

a.    The use of PE-PUR sound abatement foam in the recalled machines, including the subject device, which is prone to degradation causing severe adverse health risk and injury.

b.    Failing to design the recalled machines, including the subject device, so as to avoid an unreasonable and increased risk of harm and injury to users, including Plaintiff.

c.    Including in the design of the recalled machines, including the subject device, flawed PE-PUR sound abatement foam that is prone to break down, flake off, and/or chemicalize and infiltrate the devices air path while in use, exposing users, including Plaintiff, to

-12-

increased and unnecessary risk of severe injury and/or
disease.

d.    Failing to use alternatively available sound abatement
materials and/or foams in the recalled device, including
the subject device, such as plastic, silicone, or rubber,
which would not break down, flake off, and/or
chemicalize and infiltrate the device's air path while in
use.

e.    Otherwise   negligently   or   carelessly   designing,
manufacturing, marketing, labeling, packaging, and/or
selling the recalled machines, including the subject
device.

45.    At all times, the use of the recalled machines, including the subject

device, was foreseeable and foreseen by Defendants as it was used by Plaintiff

in the manner intended by Defendants.

46.    The recalled machines, including the subject device used by

Plaintiff, were defective in design in that they failed to perform as safely as a

reasonable consumer would expect when used in an intended or reasonably

foreseeable manner.

47.    The recalled machines, including the subject device used by

Plaintiff, are further defective in that the risks of danger inherent in its design

significantly outweigh the benefits, in that the dangers posed by the design was

great, the likelihood that such danger would cause injury was substantial, there

were feasible, safer alternative designs known to Defendants at the time of

manufacture, the financial costs of an improved design was minor, and there

-13-

likely no adverse consequences to the product, or to the user, that would result from an alternative design.

48.    Defendants knew that the recalled devices, including the subject device, and the component parts of these machines would be purchased and used without inspection for defects in the design of the machine or any of its attachments.

49.    The recalled machines, including the subject device, and the component parts were defective when they left control of the Defendants.

50.    As a direct and proximate result of the recalled machines their defects, including the subject device and its defects, Plaintiff has experienced significant mental and physical pain and suffering has sustained permanent injury, has undergone medical treatment and will likely undergo future medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income and other damages.

51.    Defendants are strictly liable to Plaintiff for designing, manufacturing, marketing, labeling, packaging, and selling the recalled machines, including the subject device.

52.    As a direct and proximate result of one or more of the above-stated negligent acts, Plaintiff has suffered and will continue to suffer injury of a

personal and pecuniary nature, including pain and suffering, medical expenses, lost income, and disability.

### COUNT II: PRODUCTS LIABILITY – MANUFACTURING DEFECT

53.    Plaintiff incorporates by reference the preceding paragraphs as fully set forth herein.

54.    The use of the recalled machines, including the subject device used by Plaintiff, was, at all times, foreseeable and foreseen by Defendants as it was used by Plaintiff in the manner intended by Defendants.

55.    The recalled machines, including the subject device, were defective at the time of their manufacture, development, production, testing, inspection, endorsement, sale and distribution, and at the time they left the possession of Defendants, in that, and not by way of limitation, the products differed from Defendants' intended result and intended design and specifications, and from other ostensibly identical units of the same product line.

56.    Defendants knew, or should have known of the defective nature of the recalled machines, including the subject device, and the component parts, including among other things, that the PE-PUR foam used in the devices was prone to degradation, chemicalization, flaking, disintegration, that it could be inhaled or ingested by the user while sleeping, and created an unreasonably high risk while in use, and would foreseeably result in injury or death to the public, purchaser, and/or consumers.

-15-

57.    Specifically, Defendants improperly designed the recalled machines, including Plaintiff's subject device, by:

a.    Manufacturing the recalled machines, including the subject device, with a specific lot and/or lots of flawed PE-PUR sound abatement foam that could degrade, disintegrate, flake off, and/or chemicalize and infiltrate the device's air path while in use, exposing the user to increased and unnecessary risk of severe injury or disease.

58.    As a direct and proximate result of one or more of the above-stated negligent acts, Plaintiff has suffered and will continue to suffer injury of a personal and pecuniary nature, including pain and suffering, medical expense, lost income, and disability.

## COUNT III: PRODUCTS LIABILITY – WARNING DEFECT

59.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

60.    The recalled machines, including the subject device used by Plaintiff, were not reasonably safe for their intended uses and were defective as described herein as a matter of law due to lack of appropriate and necessary warnings. Specifically, Defendants did not provide sufficient warnings, including, but not limited to, the following:

a.    The recalled machines', including the subject device purchased and used by Plaintiff, flawed PE-PUR sound abatement foam propensity to breakdown, flake off, and/or chemicalize and enter into the devices air path

-16-

while in use, exposing the user to an increased and unnecessary risk of severe injury or disease.

b. The recalled machines', including the device owned and used by Plaintiff, PE-PUR foam propensity to degrade, fragment, and chemicalize.

c. The rate and manner in which the PE-PUR sound abatement foam would break down, flake-off, and/or chemicalize and enter the device's air path while in use.

d. The risk of chronic inflammation resulting from the use of the recalled machines, including the device used and owned by Plaintiff.

e. The risk of chronic infection resulting from use of the recalled machines, including the device used and owned by Plaintiff.

f. The risk of severe disease or injury resulting from exposure to the PE-PUR sound abatement foam.

61. As a direct and proximate result of the recalled machines, including the subject device, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment, has suffered financial and economic loss, including but not limited to, obligations for medical services and expense, and/or lost income, and other damages.

## COUNT IV: BREACH OF EXPRESS WARRANTY

62. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

-17-

63.    Defendants marketed and sold the recalled machines, including the subject device, into the stream of commerce with the intent that they would be purchased by Plaintiff and other members of the general public.

64.    Defendants expressly warranted, advertised, and represented to Plaintiff that the subject device was safe and appropriate for human use.

65.    Defendants made these express warranties regarding the subject device's quality and fitness for use in writing through its website, advertisements, and marketing materials, and on the subject device's packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff entered into upon purchasing the subject device.

66.    Defendants' advertisements, warranties, representations, and omissions regarding health risks associated with the subject device, were made in connection with the sale of the device to Plaintiff.

67.    Plaintiff relied on Defendants' advertisements, warranties, representations, and omissions regarding the subject device in deciding whether to purchase and use Defendants' product.

68.    Defendants' recalled machines, including the subject device used and owned by Plaintiff, do not conform to Defendants' advertisements, warranties, representations, and omissions in that they are not safe, healthy, and appropriate for human use, and pose risks of severe injury and disease.

-18-

69.    Defendants therefore breached their express warranties by placing the recalled machines, including the subject device used and owned by Plaintiff, into the stream of commerce and selling it to consumers, when their use posed health risks, had dangerous effects and were unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Defendants. These associated health effects substantially impair the use, value, safety of the recalled machines, including the subject device used and owned by Plaintiff, and rendered the devices worthless.

70.    Defendants were aware, or should have been aware, of the toxic or dangerous health effects of the use of the recalled machines, including the subject device owned and used by Plaintiff, but nowhere on the package labeling or package inserts or on Defendants' websites or other marketing materials did Defendants warn Plaintiff he was at risk of developing adverse health effects as a result of the dangerous PE-PUR Foam used in the recalled machines, including the subject device used by Plaintiff.

71.    Instead, Defendants concealed the dangerous health effects of the PE-PUR Foam used in the recalled machines, including the subject device used by Plaintiff, and deceptively represented that these products were safe, healthy, and appropriate for use. Thus, Defendants utterly failed to ensure that the material representations they were making to consumers were true.

72.    The adverse health effects associated with use of the recalled machines, including the subject device used and owned by Plaintiff, existed when they left Defendants' possession or control and were sold to Plaintiff. The dangers associated with use of the recalled machines, including the subject device, were undiscoverable by Plaintiff at the time of purchase.

73.    As manufacturers, marketers, advertisers, distributors and sellers of the recalled machines, including the subject device used by Plaintiff, Defendants had exclusive knowledge and notice of the fact that the recalled machines did not conform to the affirmations of fact and promises.

74.    In addition, or in the alternative, to the formation of an express contract, Defendants made each of the above-described representations and omissions to induce Plaintiff to rely on such representations and omissions.

75.    Defendants' affirmations of fact and promises and their omissions were material, and Plaintiff reasonably relied upon such representations and omissions in purchasing and using the recalled device at issue.

76.    All conditions precedent to Defendants' liability for its breach of express warranty have been performed by Plaintiff.

77.    Affording Defendants an opportunity to cure their breaches of express warranties would be unnecessary and futile here. Defendants were placed on reasonable notice from user reports and its lab testing that the

PE-PUR Foam in the recalled machines, including the subject device used by Plaintiff, was unsafe.

78.    Defendants had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the recalled machines, including the subject device used by Plaintiff, to make them safe and healthy for use but failed to do so until now.

79.    As a direct and proximate result of the recalled machines, including the subject device used by Plaintiff, aforementioned defects as described herein, the Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

**COUNT V: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

80.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

81.    Defendants are merchants engaging in the sale of goods to Plaintiff and members of the general public.

82.    There was a direct sale of goods from Defendants to Plaintiff, creating privity between Plaintiff and Defendants.

83.    At all times mentioned herein, Defendants manufactured or supplied the recalled machines, including the subject device used and owned by Plaintiff, and prior to the time of recall, Defendants impliedly warranted to Plaintiff that the recalled machines, including the subject device purchased and used by Plaintiff, was of merchantable quality, fit for its ordinary use, and conformed to the promises and affirmations of fact and omissions made on the recalled machines, including the subject device used by Plaintiff, labels and packaging, including that such machines were safe and appropriate for human use. Plaintiff relied on Defendants' promises, and affirmations of fact and omissions, when he purchased and used the subject device.

84.    Contrary to these representations and warranties, the recalled machines, including the subject device owned and used by Plaintiff, were not fit for ordinary use and did not conform to Defendants' affirmations of fact, and promises and omissions, because use of the recalled machines, including the subject device used by Plaintiff, was accompanied by the risk of adverse health effects, which does not conform to the labels and packaging of the devices.

85.    Defendants breached their implied warranties by selling the recalled machines, including the subject device used and owned by Plaintiff, which failed to conform to the promises or affirmations of fact made on the packaging or label, as use of each recalled machines, including the subject used by

-22-

Plaintiff, was accompanied by the risk of developing adverse health effects that do not conform to the packaging or label.

86.    Defendants were on notice of this breach, as it was made aware of the adverse health effects accompanying use of the recalled machines, including the subject device used by Plaintiff, through user reports submitted to Defendants and through lab testing.

87.    Privity exists because Defendants impliedly warranted to Plaintiff through the warranting, packaging, advertising, marketing, and labeling that the recalled machines, including the subject device owned and used by Plaintiff, were suitable for use to treat health conditions, and made no mention of the attendant health risks associated with use of such machines.

88.    As a direct and proximate result of the aforementioned defects of the recalled machines, as described herein, including the subject device owned and used by Plaintiff, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

## COUNT VI: FRAUDULENT MISREPRESENTATION

89.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

-23-

90.    Defendants failed to advise Plaintiff that the recalled machines, including the subject device used and owned by Plaintiff, posed serious health risks to their users, and Defendants falsely represented to Plaintiff that the recalled machines, including the subject device used by Plaintiff, was safe for human use.

91.    Defendants intentionally, knowingly, and recklessly made these misrepresentations and omissions to induce Plaintiff and other members of the general public to purchase the recalled machines, including the subject device purchased and used by Plaintiff.

92.    Defendants knew that their representations and omissions about the recalled machines, including the subject device used and owned by Plaintiff, were false in that the recalled machines, including Plaintiff's device, contained PE-PUR Foam and thus were at risk of causing adverse health effects to users, failing to conform to the products' labels, packaging, advertising, and statements. Defendants knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff.

93.    Plaintiff did in fact rely on these omissions and misrepresentations and purchased and used the subject device to his detriment. Given the deceptive manner in which Defendants advertised, represented, and otherwise promoted the recalled machines, including the subject device used and owned

-24-

by Plaintiff, Plaintiff's reliance on Defendants' omissions and misrepresentations was justifiable.

94.    As a direct and proximate result of the aforementioned defects  of the recalled machines, including the subject device owned and used by Plaintiff, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

### COUNT VII: FRAUD BY OMISSION

95.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

96.    Defendants concealed from and failed to disclose to Plaintiff that use of recalled machines, including the subject device used and owned by Plaintiff, is accompanied by a risk of adverse health effects, which does not conform to the products' labels, packaging, advertising, and statements.

97.    Defendants were under a duty to disclose to Plaintiff the true quality, characteristics, ingredients and suitability of the recalled machines, including the subject device used and owned by Plaintiff because:

     a.    Defendants were in a superior position to know the true state of facts about its products.

-25-

b.    Defendants were in a superior position to know the risks associated with the use of, characteristics of, and suitability of the recalled machines, including the subject device owned and used by Plaintiff, for use by individuals; and

c.    Defendants knew Plaintiff could not reasonably have been expected to learn or discover prior, or after, purchasing the subject device that there were misrepresentations and omissions by Defendants in the packaging, labels, advertising, and websites regarding the health risks associated with use of these devices.

98.    The facts concealed or not disclosed by Defendants to Plaintiff were material in that a reasonable consumer would have considered them important when deciding whether to purchase and use the recalled machines, including the subject device purchased and used by Plaintiff.

99.    Plaintiff justifiably relied on Defendants' omissions to his detriment. This detriment is evident from the true quality, characteristics, and risk associated with the use of the recalled machines, including the subject device used by Plaintiff, which is inferior when compared to how the recalled machines, including the subject device used by Plaintiff, are advertised and represented by Defendants.

100.    As a direct and proximate result of the aforementioned defects of the recalled machines, including the subject device used and owned by Plaintiff, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely

undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

<strong><u>COUNT VIII: NEGLIGENT MISREPRESENTATION</u></strong>

101. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

102. Defendants had a duty to Plaintiff to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of the recalled machines, including the subject device used and owned by Plaintiff.

103. Defendants breached its duty to Plaintiff by developing, testing, manufacturing, advertising, marketing, distributing, and selling the subject device to Plaintiff that did not have the qualities, characteristics, and suitability for use as advertised by Defendants, and by failing to promptly remove the recalled machines, including the subject device owned and used by Plaintiff from the marketplace, or to take other appropriate remedial action upon becoming aware of the health risks of the recalled machines, including the subject device used and owned by Plaintiff.

104. Defendants knew or should have known that the qualities and characteristics of the recalled machines, including the subject device used and owned by Plaintiff, were not as advertised or suitable for their intended use and

-27-

were otherwise not as warranted and represented by Defendants. Specifically,

Defendants knew or should have known that:

   a.    Use of the recalled machines, including the subject
         device used by Plaintiff, was accompanied by risk of
         adverse health effects that do not conform to the
         packaging and labeling;

   b.    The recalled machines, including the subject device
         used by Plaintiff, were adulterated, or at risk of being
         adulterated, by the PE-PUR Foam; and

   c.    The recalled machines, including the subject device
         used by Plaintiff, were otherwise not as warranted and
         represented by Defendants.

   105.  As a direct and proximate result of Defendants' negligence, Plaintiff

has experienced significant mental and physical pain and suffering, has

sustained permanent injury, has undergone medical treatment and will likely

undergo further medical treatment and procedures, has suffered financial or

economic loss, including, but not limited to, obligations for medical services and

expenses, lost income, and other damages.

## DAMAGES

   106.  As a proximate result of the aforementioned negligent and

fraudulent acts, and omissions, by Defendants, Plaintiff has suffered damaged.

As a result, Plaintiff is entitled to recover the following damages from

Defendants:

   a.    Past and future pain and suffering;

b.    Past and future hospital, medical, nursing, treatment, rehabilitation, and incidental expenses;

c.    Past and future mental and emotional distress;

d.    Past and future lost wages;

e.    Permanent partial impairment;

f.    Loss of ability to earn;

g.    Scars, disfigurement, and other visible results of his injuries;

h.    Punitive damages; and

i.    Other damages that will be more particularly described during the course of litigation.

## JURY TRIAL DEMAND

107. Plaintiff, pursuant to Rule 38 of the Arkansas Rules of Civil Procedure, demands a jury trial on all factual issues.

WHEREFORE Plaintiff, Darryl Handley, prays for judgment against Defendants, Koninklijke Philips N.V., Philips North America, LLC, Philips Holding USA, Inc., and Philips RS North America, LLC,for all compensatory and punitive damages in an undetermined amount in excess of the amount necessary for federal diversity jurisdiction, and for all just and proper relief to which he is entitled, whether or not prayed for herein.

DATED this 11th day of February, 2022.

Respectfully submitted,

**DARRYL HANDLEY, PLAINTIFF**


By:   /s/ David A. Hodges
            DAVID A. HODGES
            Attorney at Law
            212 Center Street, Fifth Floor
            Little Rock, AR 72201-2429
            Arkansas Bar No. 65021
            **T** 501-374-2400
            **F** 501-374-8926
            david@hodgeslaw.com